STATE NAT. BANK OF MAYSVILLE v. ELLISON et al.

.(Circuit Court, S. D. Ohio, W. D.   June 1, 1896.)

1. PROBATE COURTS—JURISDICTION—RAISING ASSIGNMENT IN INSOLVENCY.
   Under the insolvency laws of Ohio, the probate court in which an assignment is filed has jurisdiction, upon the consent of all creditors, to make an order raising the assignment, and directing the assignees to reconvey the property.   Garver v. Tisinger, 18 N. E. 491, 46 Ohio St. 66.

2. JUDGMENTS—COLLATERAL ATTACK—ORDERS IN INSOLVENCY PROCEEDINGS.
   An order of a probate court in Ohio, in a proceeding over which it had fully acquired jurisdiction, finding that all the creditors of an insolvent had assented to the raising of the assignment, cannot be collaterally impeached.   Wehrle v. Wehrle, 39 Ohio St. 365, followed.   Noble v. Railroad Co., 13 Sup. Ct. 271, 147 U. S. 173, applied.

3. SAME—ESTOPPEL.
   Where a firm creditor was notified of an order of the probate court, raising the assignment of one of the partners, and did not object thereto for two years, but continued to do business with the firm, held, that such creditor was thereby barred from subsequently objecting to the validity of , the order, and. hence from questioning, on that ground, a subsequent conveyance, for full consideration, of real estate owned by such partner.

4. INSOLVENCY—MORTGAGE FOR BENEFIT OF CREDITORS—SIGNING COMPOSITION AGREEMENT. .
   A mortgage made by an insolvent, covering the bulk of his property, in trust for all creditors who should sign a composition agreement, is a mortgage made in contemplation of insolvency, and under Rev. St. Ohio, § 6343, inures to the benefit of all creditors, whether they signed the composition agreement or not; subject, however, to the rule that the individual property shall be first applied to individual debts, and the surplus, if any, divided among partnership creditors.

On October 14, 1889, the defendant R. H. Ellison executed a deed of assignment of all his real and personal property for the benefit of his creditors under the insolvency laws of Ohio to his co-defendants, W. A. Blair, W. H. Pownell, and T. J. Shelton, who immediately filed the same in the probate court of Adams county, a court of competent jurisdiction, and qualified and assumed the trust.   Prior to this date, Ellison had been for many years engaged in the banking business in Manchester. Ohio, on his individual account. In the spring of 1889, Ellison and his co-defendant Shelton formed a partnership, under the name of Ellison & Shelton, to trade in tobacco, and at the date of the assignment this firm was indebted to the complainant upon two promissory notes, aggregating $7,000, and not then due.

Within a few days after the filing of the deed of assignment, which was caused by difficulties in Ellison's banking business, a composition was agreed upon between him and his individual creditors, and thereafter an order was made by the Adams county probate court finding that Ellison had settled with all his creditors, and directing his assignees to reconvey his property to him.   Afterwards, in pursuance of this composition agreement, on October 28, 1889, Ellison executed to his co-defendants, Blair, Pownell, and Shelton, a mortgage upon all his property in trust .for 'the benefit of his creditors, and providing for payments of claims of his individual creditors in installments at given dates.   This mortgage gave specific power of sale to meet these payments.   A copy of the order of the probate court setting aside the assignment was sent by Ellison's agent to the complainant,· and was received November 4, 1889.   The letter accompanying the copy of the order stated that Ellison was again in the banking business, and solicited a continuance of former relations between the two banks, for the complainant had been a correspondent of Ellison's bank prior to his failure.   This relation was continued after his failure and resumption of business.

About ·this same time the defendant Shelton made from his' individual means a partial payment upon the indebtedness of Ellison & Shelton to the

complainant, and turned over to it, as security for the residue of the claim, tobacco belonging to Ellison & Shelton, which was then supposed to be much more than sufficient in value to protect the claim. The market price, however, of tobacco declined, and the quality of this tobacco deteriorated; so that when it was all sold a considerable balance was left due the complainant. Renewal notes were given from time to time by the firm of Ellison & Shelton for the sum due the complainant, the last of these notes having been given in January, 1891, and being signed not only in the firm name, but with the names of the persons who composed the firm.

On September 16, 1891, the original bill was filed in this cause, setting forth the making of the assignment and the subsequent execution of the trust mortgage, and seeking to set aside the same as in fraud of complainant's rights, and for general relief. On October 19, 1891, the complainant in this suit filed an action at law in this court upon the notes of Ellison & Shelton held by it. On November 19, 1891, David Sinton bought from the defendant R. H. Ellison and his trustees a large part of the real estate of Ellison covered by the trust mortgage, and paid the consideration to the trustees. On December 3, 1891, complainant recovered judgment in its action at law upon the notes given by Ellison & Shelton, and issued execution, which was levied in part upon the lands conveyed to Sinton. On January 14, 1892, complainant filed a supplemental bill in this action, making David Sinton a party thereto, and alleging its judgment at law and execution, and that the sale to Sinton was in fraud of its rights, and seeking to enforce the priority of its execution. Sinton has filed a cross bill, seeking to quiet his title against complainant and all other parties.

G. Baumbach & Son, for complainant.
Wm. Worthington and Herron, Gatch & Herron, contra.

SAGE, District Judge (after stating the facts as above). Upon full consideration of this cause the court has reached the following conclusions:

1. That the probate court of Adams county, Ohio, had jurisdiction to raise the assignment and order the assigned property to be restored to the assignor. This proposition is established by Garver v. Tisinger, 46 Ohio St. 66, 18 N. E. 491. The court in that case recognized the necessity of the consent of all creditors, manifestly for the reason that by the assignment the equitable title is vested in the creditors for whose benefit the assignee holds the legal title in trust. The probate court found in its order raising the assignment that all the creditors of Ellison assented thereto. That finding, so far as the validity of the raising of the assignment is concerned, is conclusive except upon direct attack. It cannot be collaterally impeached. Wehrle v. Wehrle, 39 Ohio St. 365.

The rule of the federal courts that the jurisdiction of the court can be inquired into collaterally applies to the initial proceedings whereby the court obtains jurisdiction of the parties or subject-matter. The order here in question was made in a pending proceeding wherein jurisdiction had previously been acquired. The distinction is clearly drawn in Noble v. Railway Co., 147 U. S. 173, 174, 13 Sup. Ct. 271.

2. The complainant is barred by its own laches. It was notified in the first week of November, 1889, that the assignment had been raised, and the property restored to the custody and management of Ellison. New debts were about to be incurred by him in conducting his individual business, and the entire situation was changed

upon the assumption that the raising of the assignment was assented to by all the creditors. The complainant was at the time furnished with a copy of the order, and invited to continue, and did continue, to do business with Ellison thereafter. The complainant also obtained from Ellison & Shelton an assignment of all the assets held by that firm from which it collected a considerable portion of its claim. It appears from the record that it was then supposed by all concerned that those assets were ample to pay the complainant's entire claim. Two years elapsed before complainant brought this suit. It was too late then for the complainant to object to the validity of the order raising the assignment.

Precisely this point was raised in the court of common pleas of Hamilton county in the case of St. Louis Nat. Bank v. Standard Wagon Co., on appeal from the probate court. There, before the first assignment of the Standard Wagon Company was raised, its president applied personally to the president of the St. Louis Bank for the consent of the bank to the raising of the assignment. The president of the bank declined to give a written consent, for the alleged reason that he might thereby impair certain security which the bank held; but he indicated that he would not object, stating that the bank would look to the Standard Wagon Company, instead of the assignor, for its claim; and afterwards suit was brought by the bank against the Standard Wagon Company for the amount due. The assignment was raised in August. It was not until December following that the bank gave notice to any one that it intended to contest the validity of the order raising the assignment. It was held that, having led the bank company to believe that it was willing the assignment should be raised, and that it would look to the corporation for its money, and the company having acted on that belief, the bank was estopped from contesting the validity of the order by which the assignment was raised. So here, the complainant having tacitly acquiesced in the raising of the assignment, and having waited two years before making any objection thereto, the creditors of Ellison meantime proceeding upon the assumption that the raising of the assignment was valid, the complainant ought not to be allowed to now question it.

It is not necessary to consider other points which are presented for the defense. The result is that the sale by Ellison to Sinton of the real estate referred to in the bill and in Sinton's answer on November 19, 1891, for full consideration, is not open to attack, and the case must be dismissed as to Sinton.

3. As to the other defendants the case is quite different. On the 28th of October, 1889, Ellison executed a mortgage to the defendants, Blair, Pownell, and T. J. Shelton, in trust for the benefit of such of his creditors as had signed or should sign a composition agreement for an extension as set forth in the mortgage, which included several tracts of real estate, embracing the bulk of Ellison's property. The complainant did not sign the agreement. Under section 6343 of the Revised Statutes of Ohio that mortgage inured to the equal benefit of all creditors in proportion to the amount of their respective claims. Every creditor, therefore, whether a creditor at

large or a judgment creditor, was beneficially interested in the trust created by that mortgage, and entitled to proceed in equity for its enforcement in his behalf. The complainant has been excluded from all participation therein. It is entitled to a decree placing it upon an equality with those who signed the composition agreement, and requiring the mortgagees to recognize its claim, and pay dividends upon the full amount thereof. The validity of the composition agreement is not questioned. It is binding upon those who signed, but the trust mortgage, having been made in contemplation of insolvency, with intent to prefer the creditors who entered into the composition agreement, inures to the equal benefit of all creditors in proportion to the amount of their respective claims. The rule that individual property shall be applied first to the payment of individual creditors, and the surplus, if any, divided among partnership creditors, and that partnership property will be applied first to the payment of partnership debts, and, second, if there be any surplus, to the payment of individual debts, which is the rule recognized alike in the federal courts and in the courts of Ohio, will be applied in this case. What is said above with reference to dividends in favor of the complainant will be understood to be subject to this rule. Decree for complainant accordingly, with costs.